Good morning, I'm Paul Gray on behalf of the government. May I have three minutes for rebuttal, Your Honor? Sure. The issue before the panel is very simple. We don't see the government as an appellant very often. No, Your Honor, we do not. In criminal cases. This particular matter is very interesting. It's been the subject of several precedents, and as a factual matter, we appreciate the opportunity to come over and speak to the Court. The issue is very simple. Did the government produce sufficient evidence to find that Tommy Carbo, the defendant, schemed with the corrupt public official and the admittedly corrupt second contractor to deprive the citizens of Norristown of beyond his own services, and did they agree to keep that secret relationship from the borough and its citizens? It's an honest services fraud case, Your Honor. That's a single issue. I would like to discuss what crime, Your Honors, must decide that was proved by sufficient evidence. The crime here is that Carbo, with knowledge that Biondi had to report to someone their illegal, illicit relationship, schemed with these individuals to keep that matter from the borough and its citizens. The District Court did not properly charge the jury with that. The District Court charged the jury that we had to prove that Carbo knew that there was a state requirement that Biondi fill out a form on which he include his income, the jobs he had, and any financial interests that he dealt with as the borough manager in Norristown, which conflicted with his Norristown duties. That's an incorrect standard. This Court will only have to... That's not... Is that before us, though? I mean, what the proper standard is? It is before you to the extent that this Court needs to determine whether we proved what the law required us to prove, and that is the elements of the offense. And that is, as I stated, Your Honor, that Carbo kept what he knew Biondi should report secret, not that Carbo knew that Biondi had to complete the state-required form. I hope I answered your question, Your Honor. I'll elaborate. In an honest services fraud case, as this Court knows, the public official has to have a duty to report. In this particular case, there were two duties. Biondi was required to fill out a state-mandated ethics form, which he did and on which he lied. Borough law, borough of Norristown law, also required that Biondi, as a municipal administrator, disclose to the borough any interests he had which conflicted with his duties as a municipal administrator. That was part of your case in the district court, right? Yes. That's correct, Your Honor. A violation of local law is sufficient, right? That's correct. A violation of local law under Antico is sufficient to satisfy us. Is that before us, too, that question? It is to the extent that you need to know what evidence we had to prove. In this respect, Your Honor, we did not have to prove that Carbo knew that Biondi had to fill out a form. We only had to prove that Carbo knew that Biondi had to report their illegal relationship and he schemed with him not to do it. It's a lesser standard, Your Honor. I hope I've made myself clear. You haven't made it clear to me. Did you object to this charge? Yes. We proposed to the district court that it instruct, pursuant to the viable law in this circuit, Antico, that we only need to prove that Carbo assisted Biondi to keep their relationship secret. The district court refused, said that it read Panarella as having stepped back from Antico and that's not the situation. So the court needs to understand we need, you need, only to decide that we've proved that Carbo assisted Biondi to keep their relationship secret from the borough at the very least. I hope that's clear, Your Honor. It's not clear. It's not clear. Your brief says, in short, the government has never argued, never argued that specific intent under Section 1341 can be proved without evidence that the defendant knew of the existence of a reporting requirement. To the contrary, the government has consistently maintained that it was required to prove that Carbo was aware of Biondi's purpose to violate Biondi's obligation to report conflicts of interest to his public employers. That's correct, Your Honor. We had to prove that Carbo was aware that Biondi had to report the illegal relationship, but not that Carbo has to be aware that Biondi has to fill out the state-mandated form. There was also a violation of borough law, which did not require a reporting to be done in writing, which required Biondi to recuse himself from the illegal relationship and report his illegal relationship to his borough superiors. But isn't the issue before us whether there's sufficient evidence in this record for a jury to find that Carbo, in fact, knew of Biondi's duty to report? Yes, Your Honor. That's correct. Okay. Well, let's get on with it, then. The district court agreed, Your Honor, that we proved that Carbo entered into a scheme with Biondi and Mazzarella to conceal the cash payments made to Biondi and to conceal their entire business relationship. The district court did not consider other pieces of evidence or draw inferences from those evidence that prove that knowledge. And if I may say, Your Honor, that the state of the law at this particular time, given Panarella and Kemp and the recent Charcock decision, which is not presidential but came out two months ago, is that a private party who conceals payments to a public official who has a duty to report and does not report, and that public official makes discretionary acts in favor of the private party, that satisfies the knowledge requirement for the reporting. A jury may infer from those facts alone that the private party was aware of the reporting requirement. That's the state of the law in this circuit. In effect, the district court has agreed that the government prove those facts, which satisfies the current standard here. But we've proved more in this particular case, Your Honor. If I may get to those particular facts. Well, the district court said, look, anybody that knows the evidence here permits a finding that the defendant knew he was in a conflict of interest situation, that Biondi was in a conflict of interest situation, and that Biondi was not, was concealing it. Yes, Your Honor. Well, if somebody knows they're benefiting from, you say you can infer from the fact that Carbo concealed the trucking relationship, that he knew of a duty to, of Biondi to report. Yes, Your Honor. But anybody that was in Carbo's position without knowledge of a duty to report would conceal the conflict of interest situation that he knew he was in and benefiting from. Perhaps, Your Honor. But the district court's decision was not to determine whether it thought that there is an inference that the person concealed for some other illegal purpose. And the court found there was an illegal purpose. But whether the jury could rationally infer that the purpose of the concealment was to disguise the relationship with Anthony Biondi. The facts in this case, all the facts. If anybody that was in Carbo's situation would have concealed it, how can you infer beyond a reasonable doubt that that means he was aware that Biondi had a duty to report? Well, that's the state of the law in this circuit. In addition to that, there are several facts. I'll reach the facts now, Your Honor. The district court agreed that Tommy Carbo was instructed not to drive the truck, which was a source of the illegal cash, in the borough. She accepted that inference because the other borough contractor, Larry Mazzarelli, who also pled guilty to these offenses, was instructed by Biondi not to drive the truck in the borough. The court agreed that if Biondi instructed Mazzarelli not to drive the truck in the borough, then the jury could believe that Biondi instructed Carbo not to drive the truck in the borough. From that, there's another inference that can be drawn. Larry Mazzarelli also testified that he was with Anthony Biondi at a point looking at the truck, which was a source of illegal money. And at that point, Biondi told Mazzarelli, I, looking at this truck, cannot have a second job with the borough. I cannot make extra cash. And Mazzarelli said to Biondi at that point, well, then how can you have an apartment house from which you make rent? And Biondi admitted to him, because I put up my wife's name. This jury is free to infer that since Carbo received the same instruction about not driving the truck, that Carbo likely received the same instruction from Biondi as the purpose that they're doing this concealing. That is, I can't make money through a truck. I can't have any extra income. And at the time that Biondi told this to Mazzarelli, Biondi told him because of the borough rules or charter. And that's what they call it, the borough charter. So Carbo, the jury, is free to infer that Carbo had the same instruction from Mazzarelli, from Biondi, excuse me, that the reason we're secreting this money, this cash I'm paying you, is because as a borough administrator, I can't have another job. It has to be paid in cash. And Carbo admitted, knew it had to be paid in cash. And we're doing it because I can't have a second job. There are borough rules which prohibit me having a second job. If Carbo knows there are borough rules prohibiting him from having a second job, then Carbo knows that by paying him cash to use the truck, which is generating the illegal cash, and by not using it in the borough, and by not telling anybody about it, including borough employees and his own employees, he knows there are borough rules which prohibit it. Therefore, he satisfies the knowledge requirement that this matter should be reported to the borough. In fact, Carbo's language on the tape recording substantiates that. And the precedent in this court, there is no language from any covert spirit as to what they're doing. Carbo has, on this tape recording with the cooperator, been caught saying he's worried about the profile that Larry Mazzarelli kept in the borough driving around being seen, and Carbo preferred it when he was under the radar. The jury is free to infer from that statement that Mazzarelli and Carbo and Biondi don't want to have their profile in the borough kept low for a specific reason. We proved at trial that the vast majority of the money available for Norristown contracting went to Mazzarelli and Carbo. And the district court said that, said there's plenty of evidence here from which the jury could infer that these two contractors were benefiting from a conflict of interest situation. But that doesn't mean that they knew. I mean, one of them did. The other one was told. Can you infer from the fact that Biondi told one that he told the other? We find it illogical that the court could infer that Biondi instructed Mazzarelli not to use a truck in the borough, which is key to keeping this whole thing secret. But it would be illogical to assume, for the jurors to find, that Biondi did not tell Carbo the purpose of it. That is, there's a borough rule which prohibits it, and I can't make extra cash. In fact, the district court didn't mention that fact, Your Honor, in its analysis at all. And with all due respect to the district court, there was a number of, there's a lengthy opinion discussing each individual fact. But the district court never added each fact to its other to draw the reasonable inferences. Your case depends on our, does it? Question, does your case depend on our drawing the inference that because he told Mazzarelli, he also told Carbo? No, Your Honor. No, Your Honor. Carbo's actions, in and of themselves, in view of the prior precedent in this law, in this jurisdiction, prohibit the, permit the jurors to infer that he knew what it was he was doing and why he was concealing, that there was a reporting requirement. I believe the inference from the Mazzarelli statement, which he expressed the actual borough rule, is an important one, but it is not, in and of itself, necessary. Under the facts of Kemp and especially Chartok, the current status in this circuit is that concealing payments to a politician who's committing discretionary acts in your favor when that politician doesn't report them. Chartok is not the law of this circuit, however. Yeah. It's not precedential, Your Honor. That's right. Therefore, it's not the law of this circuit. Well. It is not the law of this circuit. We can't convince the bar of that. We don't, the reason is we don't circulate among us non-precedential opinions. Okay, Your Honor. Therefore, we haven't had an opportunity to give it the infirmature of the court. I understand, Your Honor. So that's, that's why. But, but Kemp stands for the same proposition. Okay. In Kemp, LaVar Hawkins, and I admit that, that decision came out two weeks after the district court's decision, but LaVar Hawkins was convicted in the Kemp case on, of honest services fraud. The evidence against Hawkins was that he concealed payments to the public official, Kemp, through a third party, that there was actions that were being considered to be taken by the illegal official on behalf of the illegal payer, and those matters were not reported to the public authority. I have a requirement to point out to you that your red light is on. Thank you, Your Honor. Thank you for the opportunity. Thank you. Good morning, Your Honor. Good morning. Good morning. Mr. Gray. It still is. I'll try to be brief, Your Honor. It won't be very long. Good morning, Your Honor. My name is Rob Donatoni. I'm an attorney from Westchester, Pennsylvania, and I'm here to argue on behalf of. And would you please talk slowly and clearly. Thank you. I'm here to represent and argue on behalf of Mr. Carbo. Your Honor, I think the issue of jury instructions and what Judge McLaughlin sent to the jury is sort of not before the court. I think it's a narrow issue as to what the law of the circuit is. And I don't think sure how it is. I think the laws are clear and covered. I think you better talk a little slower and more clearly, Dean. I apologize. I think the issue is not what Judge McLaughlin sent to the jury by way of jury instructions. The jury convicted Carbo. And the reason we have Rule 29 review is for precisely this type of case. And I'm not here to trespass on this court's time or on... We're here to hear you, so you can go ahead. No, I understand, Your Honor. No, no. We're on the opinion, the exhaustive opinion, witness by witness, witness by witness opinion written by Judge McLaughlin in the Rule 29, granting it post-trial, setting it aside and discussing the law of this circuit with respect to wire fraud, honest services cases. And by analogy, other type of cases, drug cases and things like that requiring specific intent. I start with this proposition. Who had a duty here? And it was clearly beyond the whatever the public official was up in Norristown. That duty was, as we know, it's clear. The law is not that difficult here. He had an obligation under the Ethics Act to report and disclose. And that's his obligation. Then the question in this case becomes, did this jury have sufficient evidence, reasonable evidence, from which they could reasonably conclude beyond a reasonable doubt that Mr. Carbo had knowledge of the specific scheme charged in this indictment? Well, certainly he took a lot of steps to keep what he was doing secret. Absolutely. The truck wasn't put in his name or in his company's name. What could the jury infer from all those acts? I appreciate that question. I think the jury could infer from all of that concealment that, as Judge McLaughlin generally discussed, something nefarious was going on. In business, that is not unusual in blue-collar trucking, construction, gas station, towing type of work. You mean nefarious things are always going on? I'm saying cash is going on. I'm saying there's things like that. I'm suggesting that. What I'm also suggesting is, and I'm not suggesting that my father, who raised me in something to law school and that kind of business, was doing that kind of nefarious thing. I'm just suggesting it's a little different here than we had in Tynerella involving a lawyer and a senator, or in Kemp involving a businessman from Detroit, or in Judge Bailson's opinions in the Commerce Bank cases involving bankers, in terms of the sophistication of the knowledge. What the jury could infer is something was going on here that wasn't above board. And what a lot of times happens if we apply a reasonably equal inference kind of test here, or analysis, is what was going on here was to conceal taxes, to avoid state sales taxes, to avoid income taxes. That is often the way, unfortunately, and I didn't mean to denigrate people who work with their hands. But unfortunately, that's the way it's done. There is no evidence whatsoever in the record, Your Honors. And if I interrupted the thought, I apologize, that Mr. Carbo knew of this reporting requirement, or that he aided and concealed and tried to aid and abet in the furtherance of that scheme, to suggest that because Biondi, or whomever he told Mazzarelli, about that. Why is it more reasonable to infer that Carbo, say, thought it was to avoid income tax? Because, Your Honor. As it was, you know, then to avoid the reporting requirement. Because of this. Everyone, I think, and maybe I'm overstepping, everyone knows there are sales tax requirements and consequences. Everyone knows that there are income tax requirements and consequences. Not everyone knows there are ethics act requirements. And in fact, at the trial of this case, everyone who testified on behalf of the government, who was asked the question, did you know about an ethics act requirement reporting, or even a home charter under the North Sound Borough Code requirement, said no, not until we were in that position. Not until we needed to know. So when I say it's equally consistent, I think it's that it's just that. That the ethics requirement, as important as it is, and as necessary as it is, is less well known. And that's why perhaps the courts in this circuit, as I understand it, have made it a specific intent crime that you have knowledge of that. Biondi has the duty. Biondi has the duty to disclose and to file. But Carbo needs to have knowledge. And to suggest that because, again, if I'm repeating, I apologize. Because Mazzarelli was told, therefore, there has to be some inference. That's not an inference. That's a guess. It's a planetary gap, a leap in planetary logic, between Mazzarelli knowing and Carbo knowing, because Mazzarelli knew Carbo had to know. There's nothing in this record whatsoever, Your Honor, that that occurred. And that simply, in all due respect to my friends in the government, that's bootstrapping at its best. The district court, again, is exhausted. The briefs that were filed with her in the lower court were exhausted. The standard of review, I think, is clear. I think that to sum it up best, and then is in the lengthy opinion from the judge. How should we deal? I'm sorry to interrupt. No, I'm sorry. How should we deal with the fact that the district court apparently was under a misapprehension of the law with respect to the local law requirements? She thought that there was no requirement, and her cases suggest to the contrary. My answer to that question is, Your Honor, I don't know how we deal with that. Well, does it matter? And I don't know that it matters, because we're here up on a scope of review as to what the government proved or didn't prove beyond a reasonable doubt. And I don't mean to be smart in saying that. I didn't mean any disrespect whatsoever. No, it wasn't disrespectful. You answered the question. I don't know what to do. You think it's irrelevant for the purposes of this appeal. I think as to this precise issue, yes. But Mr. Gray said if the evidence is sufficient to show a violation, you know, assuming the local law applies, then we should affirm, right? Mr. Gray did say that. You don't agree with that? No, I agree that under the state of the law and the circuit, that the local ordinance or Home Charter or the State Ethics Act and or can serve, Your Honor, as the predicate. But there still needs to be proof of the knowledge of that. And in this case, there's even less knowledge about the Home Rule Charter than there is about the Ethics Act. I shouldn't say less. They're equally sparse, equally non-existent. Was there any evidence of newspaper reports in the area about people being charged with violations? Let me say the answer to that. I don't know what the evidence was. Yeah, I did not try the case nor write the brief. And I wish I had done both for a lot of reasons. Well, on the other hand, you're the appellee, not the appellate. Absolutely. So it went all right. And as you said, I don't get to hear that often that way. Yeah. In this record before this court, I can't say what was in the newspapers of Norristown. I mean, for example, in Philadelphia, given all of the public comment with respect to Mr. Fumo and his obligations, and that's going on downstairs as we speak, it would be hard to say that members of the Philadelphia community don't know that certain things are considered illegal. I agree. Let me try to make a distinction here or some type of parallel. There is no doubt because that is a heavily saturated case. And there's no doubt that you can be put on notice on any number of ways. Norristown is a small borough. Westchester is a small borough. They share the same type of newspapers. Fortunately, unfortunately, I get into the local newspapers out in my in southeastern Pennsylvania with some frequency. And my ego is sort of deflated every time a juror is asked in voir dire by a trial judge, have you ever heard of this guy? And the answer is no. And it's a good thing. I don't know. But I think we have to go with, if we want to live with what the record is, is that we don't have anything in this record that shows that there was publicity putting people on notice of people being arrested. I'd go one step further. Again, I'm arguing within the record and trying not to go outside of it. I haven't seen anything. But there wouldn't be anything in there that I could point the court to, nor do I think Mr. Gray can point the court to, that there was anything in there that would give Mr. Carbo notice prior to his indictment. So your position, let me summarize it. Your position is that even though the jury convicted him, the evidence of all these steps to conceal the relationship and Carbo's ownership of the truck, etc., was designed to hide taxes rather than a responsibility under the applicable ethics. I want to try to answer that a little more. I want to try to make my position a little more precise and clear to the court. And that is, all of that shows that there was, I agree that all of that existed as Judge McLaughlin did in the lower court. My position is that none of that shows, other than by way of inference upon inference and guesswork upon guesswork and speculation, that that was done to avoid a Ethics Act requirement that most people don't know exists, including the people who worked for the borough until they went to work for the borough. Or the Home Rule Charter or whatever we're going to refer to as the local ordinance. I hope that helps you in defining my position. I think I understand your position. And let me sum, Judge McLaughlin wrote an opinion. I know you've read it, but she summarizes in this fashion. Carbo's attempt at concealment may demonstrate that he believes his relationship with Biondi or his payments to him were illegal, but that is not the fraudulent scheme with which he has been charged. And I think that's critical. I go on to quote the judge. Having been charged with the honest services mail fraud in the form of participating in a scheme to avoid Biondi's reporting requirements, Carbo must be shown not just to have knowledge, I'm sorry, Carbo must be shown not just to have known of his relationship or payment to Biondi were illegal, and then she italicizes the emphasis added, but to have known that Biondi had a duty to report that relationship and those payments. This particular knowledge cannot be inferred from Carbo's attempt to conceal. Deference, I believe, has to be given to some extent to a jury conclusion, but Rule 29 also then I think says that substantial deference has to be given to the review by the district court, and the government has a heavy burden to carry in this court. And your honors, unless there are any further questions, I'll rest on the record, and I'm content. Sorry, sir. Thank you very much. Thank you, your honors. Let me address several points, your honor. First, let him sit down, please. Let him sit down so he can take notes. Okay, go ahead. Our contest with Judge McLaughlin's ruling is that Judge McLaughlin recognized all this activity which he said could be illegal and never asked why. The jury has determined why, and it's their job to determine why. That is because he's trying to hide this from the borough. Well, but the argument is the why is to conceal taxes. And that's Tommy Carbo never once in this entire week-long trial or in any documentation of the district court said, I'm doing this to conceal taxes for a reason. Had he done that, and I say this as a trial attorney using colloquial language, we should have shoved Tommy Carbo's tape-recorded comments down his throat. Because in a tape-recorded conversation which lasted 30 pages, Carbo never said one word about doing what he was doing with Biondi and Mazzarella for tax advantages. In fact, he said just the opposite, your honor. Carbo was caught on that tape-recorded conversation saying, I told Anthony, Biondi, that he better get that truck out of Mazzarella's name, get the title of that truck back before he's finished working for the borough. If Carbo was helping Biondi hide his taxes, the smartest thing would be to leave that truck in Larry Mazzarelli's name. Yeah, but for me, the tax thing is a red herring. If anybody in Carbo's position, knowing of the conflict of interest, knowing of the trucking relationship, knowing he was making a benefit from Biondi's exercise of his discretion, anybody that was in that position would want to keep it secret. Yes, your honor. And somebody with knowledge of Biondi's reporting duty would have exactly the same motive to keep it, conceal it, as somebody who had no such notice. And that's why I have a jury to determine why it was that Carbo did what he did. That's a jury call, your honor. And this court said as much. When LeVar Hawkins got up and said, what I did in the Kemp case could have been money laundering, and it could have been tax evasion. Kemp said, the government doesn't have to prove that you didn't do what you say you did. The government merely only proved what a rational jury could believe. That is, that you did honest services fraud. And LeVar Hawkins in Kemp did nothing compared to what Carbo did. And we have evidence of what Carbo was thinking about while he did it. And I wanted to mention one other point. On the same tape recording where Carbo expresses an interest in Biondi getting the title of his truck back, which is the opposite of what you would do where you're going to help Biondi evade taxes. Carbo says, there's auditors over there that might find out about this. There's a paper trail to hell for this. Well, the district court would agree. There is no paper trail with Anthony Biondi's name on everything. The players here faked Biondi's name. They put everything in Mazzarelli's name, and they kept no records of the cash being paid to Biondi. The only paper trail to hell that Biondi knows about, or Carbo would know about, are the checks from the borough of Norristown to Mazzarelli and Carbo, which were the vast lion's share of all the money Norristown was spending during the time they were paying off Biondi. So the paper trail to hell, under Carbo's own words, is we have to keep our relationship secret. We have to make sure the borough doesn't know about it. And anybody, I even argued this to the jury, everybody knows government agencies have bureaucracy. Given the fact that Mazzarelli knew there were borough rules and Carbo likely knew there were borough rules, it's very reasonable for the jury to think that Carbo knows that the borough would prohibit Anthony Biondi from taking cash from people that he is giving business to, and they would want him to report that. That is a basic, completely reasonable thought that the jury could accept in this particular case. Thank you. Thank you. We'll take this interesting case under advisement. Thank you, Your Honor. And...